EDWIN A. LOMBARD, Judge.
liThe Appellant, Bruce Feingerts, seeks review of two judgments of the district court granting motions to enforce a settlement agreement in favor of the Appellees, Robert L. Manard, PLC, and Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C., respectively. Finding that the district court did not err in determining that a compromise was reached, we affirm the judgments of the district court.
*1296 Facts and Procedural History
This Consolidated appeal involves a dispute for attorneys’ fees and costs stemming from Mr. Feingerts’ personal injury suit in the district court. Mr. Feingerts was injured in a car accident in February 2001. He initially retained the law firm of Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C. (“the Gainsburgh Firm”), to represent him in his personal injury suit, which was filed in the district court in December 2001. Mr. Feingerts also filed a claim with the Office of Workers’ Compensation (“OWC”) related to the 2001 accident; however, the instant appeal does not involve Mr. Feingerts’ workers’ compensation claim.
|2The Gainsburgh Firm later withdrew as counsel for Mr. Feingerts in his personal injury suit, and the following law firms have since represented him in the order listed:
• the Robert L. Manard Firm, PLC (“the Manard Firm”)[1]
• Cossich, Sumich, Parsiola & Taylor (“the Cossich Firm”) and
• currently, Murray, Darnell & Associates, L.L.C.
In April 2010, the Gainsburgh Firm filed a Petition of Intervention in Mr. Feingerts’ personal injury suit to recover professional fees and unreimbursed expenses. Later that month, Mr. Feingerts’ personal injury suit was settled against all defendants for the sum of $784,000.00. At the time of the settlement, he was represented by the Cossich Firm.
Mr. Feingerts was unable to reach an agreement on attorneys’ fees and costs with the Gainsburgh Firm and the Manard Firm (collectively referred to as “the Ap-pellees”) or with the Cossich Firm. On July 21, 2011, representatives of the Ap-pellees and the Cossich Firm, Mr. Fein-gerts, and his attorney Michael Darnell participated in mediation to resolve the attorneys’ fee and costs issue. A handwritten document was executed by all the participants and witnessed by the mediator at the end of the mediation. The document states in pertinent part:
Fee Dispute Settlement Agreement
In the matter of Feingerts v. State Farm, Civil Action No. 01-20552, CDC, Bruce Feingerts agrees to pay legal fees to the following attorneys in the following amounts:
^Robert Manard and Paul Mayeaux $75,000.00
Gainsburgh, Benjamin, David, Meunier & Warshauer $75,000.00
Additionally, Feingerts agrees to pay the following costs to the following attorneys:
Manard, et al . $7,359.82 (Exclusive of work comp costs)
Gainsburgh, et al $24,386.29
Nevertheless, following the mediation, Mr. Feingerts declined to compensate any of *1297 the attorneys.
The Appellees, thereafter, separately filed motions to enforce the purported settlement agreement. In November 2011, the Manard Firm filed a Motion to Enforce Attorney Fee Settlement, which the district court granted on January 12, 2012. The Gainsburgh Firm filed a “Motion to Enforce Settlement Agreement and to Authorize the Disbursement of Settlement Funds” on February 8, 2012.[2] The district court granted the Gainsburgh Firm’s motion to enforce on April 80, 2012. In response to the January 12, 2012 judgment in favor of the Manard Firm, Mr. Fein-gerts filed a motion for new trial, which the district court denied on April 2, 2012. The Appellant timely appealed both judgments of the district court, and the appeals were later consolidated.[3]
|4Mr. Feingerts’ sole assignment of error on appeal is that the district court erred by granting enforcement of a handwritten document that allegedly fails to satisfy the legal requirements of a valid and enforceable settlement agreement.
Standard of Review
A district court’s “interpretation of an alleged compromise agreement is subject to manifest error/elearly wrong review.” Hancock Bank of Louisiana v. Holmes, 09-1094, p. 6 (La.App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134 (citations omitted); Rosell v. ESCO, 549 So.2d 840 (La.1989). “This is because the existence or validity of a compromise depends on a finding of the parties’ intent, an inherently factual finding.” Id. Furthermore, we use the manifest error standard in reviewing judgments granting motions to enforce settlements. Sileo v. Berger, 11-0295, p. 8 (La.App. 4 Cir. 9/28/11), 74 So.3d 753, 758.
Argument of Mr. Feingerts
In his sole assignment of error, Mr. Feingerts argues that the district court erred by granting enforcement of a handwritten document that allegedly fails to satisfy the legal requirements of a valid and enforceable settlement agreement.
Mr. Feingerts argues that the purported settlement document executed at the end of the mediation is deficient under Louisiana law such that it is not a valid and enforceable settlement agreement. He argues that a distinct set of criteria must be met by a settlement agreement; thus, the criterion for ordinary contracts is inapplicable. He further argues that a compromise agreement extends solely to those matters that the parties expressly intended to settle and the scope of the transaction cannot be extended by implication.
Mr. Feingerts argues that the document signed at the end of the mediation was not a substantive settlement agreement because it does not contain language [5releasing any claims and it does not contain reciprocal promises of the settling parties and it does not represent a meeting of the minds.
Mr. Feingerts argues that the district court committed a legal error when it granted the motions to enforce of the Ap-pellees because the disputed document fails to meet substantive standards for val *1298 id and enforceable settlement agreements. He avers that settlement contracts are to be interpreted according to the general principles of contract interpretation found in La. Civ.Code articles 2045-57, but more specifically, there are additional rules of construction unique to settlements that must be considered which are set forth in Title XVII of the Louisiana Civil Code, entitled Compromise, in articles 3071-3083. He argues that the because the document signed by the parties did not meet the criteria set forth in Title XVII, the district court erred when it granted the two motions to enforce.
Mr. Feingerts notes that the Supreme Court in Trahan v. Coca Cola Bottling Co., United, Inc., 04-0100, p. 10 (La.3/2/05), 894 So.2d 1096, 1104, upheld a partial settlement recited on the record in the OWC. Id. (citing Brown v. Drillers, Inc., 93-1019, p. 6 n. 8 (La.1/14/94), 630 So.2d 741, 747 n. 8). Pursuant to the oral settlement, an injured employee agreed to accept from his employer a lump sum payment for past benefits, payment of medical expenses, and a reservation of the employee’s rights to future compensation. Id., 04-0100, pp. 2-3, 894 So.2d at 1100. The Supreme Court upheld the finding of. the OWC that a settlement had been reached between the parties in open court pursuant to La. Civ. Code art. 3071. Id., 04-0100, pp. 13-14, 894 So.2d at 1105-06.
He argues that the differences between the agreement recited by the parties in Trahan and the document executed by the parties herein are striking. In Trahan they stated which claims were being resolved, which were being reserved, and the | (¡amount of the partial settlement. They also promised to execute a dismissal without prejudice.
By contrast, he maintains that the handwritten document that the district court erroneously enforced does not reference which claims are being resolved. There is no operative language of release, or waiver. He argues that both of the Appellees had entirely different types of claims as the Gainsburgh Firm had a pending intervention in the personal injury suit, whereas the Manard Firm had “an inchoate claim that had not been asserted in court yet”. Nevertheless, the document does not delineate what was being resolved and what claims were still viable. Further, Mr. Feingerts asserts that he had potential claims of his own, including those arising out of the wrongful actions of the Manard Firm and attorney James Babst, who represented Mr. Feingerts in connection with his workers’ compensation claim. The document in question does not address any such claims. He contends that he also has a separate verbal agreement with some of all of the lawyers to the settlement agreement regarding claims related to his OWC claim that he was assured would be addressed later, but never was. Thus, the intent to resolve the various disputes between Mr. Feingerts and his prior attorneys simply is not manifest in the functional language of the document.
Mr. Feingerts also relies upon the case of Brown v. Drillers, Inc., to juxtapose the settlement reached in that case to the purported settlement reached in the instant matter. 630 So.2d 741 (La.1994). In Brown, the Supreme Court upheld a written settlement executed by an injured worker and his wife wherein the couple agreed to accept $900,000.00 in satisfaction of their personal injury claim and granted the defendants a full release and discharge in exchange. Id. at 746. The Court further held that at the time the agreement was executed it was intended that |7the release would bar wrongful death claims that were later brought by the injured worker’s widow on behalf of herself and her daughter. Id. at 757. In doing so, the *1299 Supreme Court reasoned that “differences which the parties do not intend to settle are unaffected by a compromise.” Id. (citing Matthew v. Melton Truck Lines, Inc., 310 So.2d 691, 693 (La.App. 1 Cir.1975)).
Mr. Feingerts differentiates the settlement upheld in Brown from the instant document at issue. He argues that the settlement document executed in Brown was entirely different from the one at issue herein because the plaintiffs in Brown specifically stated that they were releasing their claims against the defendants in their suit in exchange for a lump-sum payment. However, in the instant matter, the Appel-lees were promised a sum of money by Mr. Feingerts, but they made no return promise of any sort. The Gainsburgh Firm did not promise to dismiss its intervention in the Mr. Feingerts’ personal injury suit, nor did the Manard Firm agree to dismiss its claims for fees and costs. He argues that there was no quid pro quo because the Appellees did not agree to release him from their claims.
Lastly, he argues that in Trahan, the Louisiana Supreme Court held that La. Civ. Code art. 3071 sets forth two requirements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences. 04-0100, p. 10, 894 So.2d at 1104.
Regarding mutual intention to end litigation, Mr. Feingerts avers that the handwritten document does not indication a mutual intention of preventing or putting an end to litigation because the document does not contain language showing that both of the Appellees were releasing him from their claims. He further argues that nothing in the document indicated that he had any intention of pending litigation. For instance, he states that he is releasing his former attorneys from possible malpractice claims or waiving raising such a claim in the future. He argues that the document does not contain operative language demonstrating that the parties are settling anything. The lack of an express mutual intention to end litigation within the document demonstrates that the alleged agreement is without legal effect and cannot be enforced. Mr. Feingerts argues that La. Civ. Code art. 3076 states “[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.”
Mr. Feingerts contends that all of the terms of a settlement agreement must be read as a whole and in light of attending events and circumstances. Thus, he argues that the title of the purported agreement is not controlling of the interpretation on the whole document in light of its substantive deficiencies.
Additionally, Mr. Feingerts argues that there is a lack of reciprocal concessions by the parties. The handwritten agreement states twice therein that Mr. Feingerts agrees to pay the respective Appellees, but neither of the Appellees, or any other signatory, undertook an obligation to do anything.
The Appellees argue that the cases relied upon by Mr. Feingerts are factually distinguishable because the settlement agreement at issue did not memorialize the settlement of a personal injury case or a workers’ compensation suit. They argue that the title of the instant agreement clearly states that the document is a fee dispute settlement; thus, it was unnecessary to include release language in the agreement. The written agreement memorialized a settlement of the Appellees’ claim for fees and costs in connection with their representation of the Appellant in the personal injury lawsuit. Mr. Feingerts agreed to pay each of the Appellees $75,000.00 as well as $24,386.29 in costs to *1300 the Gainsburgh Firm and $7,359.82 in Iflcosts to the Manard Firm. The Appel-lees agreed to accept the respective amounts “in satisfaction, or compromise” of their respective claims “for fees and costs.” The Appellees aver that there was a clear meeting of the minds as evidenced by the signatures of the Appellees and Mr. Feingerts.
Additionally, they argue that the agreement meets the definition of a compromise in La. Civ.Code art. 3071 and the writing requirement of La. Civ.Code art. 3072, as it is handwritten. The Appellees further contend that pursuant to La. Civ.Code art. 2046, the words of this contract were clear and explicit and lead to no absurd consequences; thus, the language of the agreement clearly expressed Mr. Feingerts’ intent to settle their respective claims for attorney’s fees and costs related to their representation of Mr. Feingerts in the personal injury lawsuit. They further maintain that the scope of the agreement is not at issue, and Mr. Feingerts’ attempt to introduce parol evidence concerning a disputed fee in his workers’ compensation matter clearly is inadmissible to contradict the clear terms of the settlement agreement.
The Appellees rely upon the case of Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co., 98-0193 (La.App. 4 Cir. 9/30/98), 720 So.2d 372, as demonstrating a similar example of an instance where a handwritten settlement executed at the conclusion of the mediation was reached and signed by all parties and evidenced a meeting of the minds by these parties. In Walk, the parties participated in a full day of mediation which concluded with the parties executing a memorandum of settlement that set forth several handwritten terms upon which they agreed. Id. Thus, the Appellees argue that when Mr. Fein-gerts signed a document after a full day of mediation, his signature also creates a presumption that he saw and understood that he was settling the fee and cost dispute.
ImThey further assert that Mr. Fein-gerts’ contention that the agreement is not valid because he had a separate verbal agreement with some of the lawyers to the settlement agreement is not valid because such allegations of a side agreement are false, and parol evidence is inadmissible to prove an agreement between the parties pursuant to Chalmette Retail Center, LLC v. Lafayette Insurance Company, 09-0217 (La.App. 4 Cir. 10/16/09), 21 So.3d 485.
Additionally, they aver that Mr. Fein-gerts argument that the settlement agreement is unenforceable because the Appel-lees did not give anything in consideration is also without merit. The Manard Firm argues, for instance, that it had a claim for 25% of Mr. Feingerts settlement, or $196,000.00; yet, it settled with Mr. Fein-gerts for $75,000.00 in fees plus costs. Thus, it clearly had consideration to settle. Lastly, the Appellees argue that Mr. Fein-gerts’ claim, that the settlement agreement does not release him from the Appel-lees’ claims for attorney’s fees, is false. The Appellees argue that mediations throughout Louisiana are settled when one party agrees to pay a sum and the other party agrees to accept the same. Thereafter, upon payment, receipt and releases are mutually executed. They argue that Mr. Feingerts is legally protected by the agreement because the document shows that the fees and costs were negotiated. We agree with arguments of the Appel-lees.
Law and Analysis
Article 3071 of the Louisiana Civil Code provides:
A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or *1301 an uncertainty concerning an obligation or other legal relationship.
1 t ,Additionally, La. Civ.Code art. 3072 states “[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.” In order for a valid compromise to exist, we have explained that a meeting of the minds must be reached:
A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached. Walk Haydel & Associates, Inc. v. Coastal Power Production Co., 1998-0193, p. 3 (La.App. 4th Cir.9/30/98), 720 So.2d 372, 373 (citing Pat O’Brien’s Bar, Inc. v. Franco’s Cocktail Prods., Inc., 615 So.2d 429 (La.App. 4 Cir.1993), writ denied, 617 So.2d 909 (La.1993)). Indeed, a compromise is a contract. Stern v. Williams, 365 So.2d 1128 (La.App. 4th Cir.1978), writ denied, 368 So.2d 143 (La.1979).
Elder v. Elder & Elder Enterprises, Ltd., 06-0703, p. 3 (La.App. 4 Cir. 1/11/07), 948 So.2d 348, 350-51.
We further reasoned that no specific form is required for written compromises:
The law requires the compromised settlement to be reduced to writing; however, “this Court has said ‘there is no sacrosanct form which must be followed’ and ‘it is not necessary that everything intended to be compromised be in one document.’ ” Walk Haydel & Associates, Inc., 1998-0193, p. 3, 720 So.2d at 374 (quoting Charbonnnet v. Ochsner, 236 So.2d 86, 88 (La.App. 4 Cir.1970), aff'd, 258 La. 507, 246 So.2d 844 (La.1971)).
Id., 06-0703, p. 4, 948 So.2d at 351. “The whole purpose of C.C. 3071’s requirement that compromise be in writing is to avoid swapping a new dispute for an old-to avoid the necessity of credibility evaluations.” Tucker v. Atterburg, 409 So.2d 320, 322 (La.App. 4 Cir.1981). “[T]he writing requirement aims at avoiding litigation over what the terms of a settlement are.” Id.
|1gThe jurisprudence requires that an agreement “must be unambiguous, perfect and complete in itself so that nothing is left for ascertainment by parol proof.” Flowers v. U.S. Fid. & Guar. Co., 367 So.2d 107, 110 (La.App. 4 Cir.1979) (citations omitted). “The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument.” Chalmette Retail Ctr., L.L.C., 09-0217, p. 9, 21 So.3d at 492-93 (citations omitted).
Furthermore, with regard to mediations, La.Rev.Stat. 9:4111 provides
A. If, as a result of a mediation, the parties agree to settle and execute a written agreement disposing of the dispute, the agreement is enforceable as any other transaction or compromise and is governed by the provisions of Title XVII of Book III of the Civil Code, to the extent not in conflict with the provisions of this Chapter.
In the matter sub judice, both of the Appellees had claims for attorneys’ fees and costs pending against Mr. Feingerts in the district court. The parties were unable to reach an extrajudicial settlement amongst themselves and attempted to resolve their dispute in mediation. At the conclusion of the mediation, the parties signed a document, entitled “Fee Dispute Settlement Agreement” which specifies that Mr. Feingerts agrees to pay each of the Appellees a respective amount of attorneys’ fees and costs in connection with the personal injury suit. Indeed, the scope of *1302 this agreement is revealed from the parties designation of the district court case number, and the listing of all of the law firms that represented Mr. Feingerts through the settlement of his personal injury suit.
| ^Additionally, we note that after the Trahan and Brown decisions, relied upon by Mr. Feingerts, the Louisiana Legislature amended the wording of the art. 3071 in the 2007 legislative session.[4] Article 3071, as stated above, notes that a compromise may be reached through concessions made by at least one of the parties. It is clear at the very least within the four corners of this document that Mr. Fein-gerts was making concessions with both of the Appellees in order to compromise the ongoing dispute over attorneys’ fees and costs solely in his personal injury suit. The fact that he made these concessions and signed this document at the end of mediation further evidences his assent to the terms of this agreement.
Without evidence of duress, a mediation agreement signed by the parties constitutes a legal and binding compromise. Norwood v. Garber, 09-956, pp. 2-3 (La.App. 3 Cir. 2/3/10), 29 So.3d 735, 736-37 (citing LeBlanc v. State Farm Ins. Co., 03-1522, p. 8 (La.App. 3 Cir. 5/26/04), 878 So.2d 715, 720). Furthermore, as pointed out by the Appellees, we reasoned in Walk, supra, that there is a clear meeting of the minds at mediation, when mediation ends with the execution of a document memorializing an agreement between the parties. We explained:
This Court has held that a compromise is valid if there is a meeting of the minds of the parties as to exactly what 114they intended when the compromise was reached. Pat O’Brien’s Bar, Inc. v. Franco’s Cocktail Prods., Inc., 615 So.2d 429 (La.App. 4th Cir.1993), writ denied, 617 So.2d 909 (La.1993). In the instant case the parties were involved in a full day of mediation at the end of which they signed a memorandum of settlement which contained several handwritten terms upon which the parties had agreed. The fact that a whole day of negotiations was capped off by the signing of a document which memorialized the agreement between the parties signifies that there had been a meeting of the minds. Otherwise the document would not have been signed, particularly considering who signed.
Walk, 98-0193, p. 3, 720 So.2d at 373.
Similarly, in the instant matter, Mr. Feingerts actions signified that he intended to compromise his dispute over attorneys’ fees and costs with the Appellees as evidenced by him signing the agreement at the conclusion of the mediation. There was a clear meeting of the minds by the parties to resolve their dispute at mediation. Indeed, Mr. Feingerts, himself, is protected by the agreement pursuant to La. Civ.Code art. 3080 which provides that “[a] compromise precludes the parties from bringing a subsequent action based *1303 upon the matter that was compromised.” Therefore, we do not find that the district court manifestly erred in holding that the parties reached a valid compromise at the mediation. Thus, Mr. Feingerts’ assignment of error is without merit.
DECREE
For the foregoing reasons, the judgments of the district court granting the motions to enforce a settlement agreement filed by Robert L. Manard, PLC, and Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C., respectively, are affirmed.
AFFIRMED

. The Manard Firm represented Mr. Feingerts from June 2006 to March 2008. Additionally, at separate times, both the Gainsburgh Firm and the Manard Firm also represented Mr. Feingerts in his OWC claim; nevertheless, neither of those firms is currently representing Mr. Feingerts in his OWC claim.

. The Gainsburgh Firm initially filed a “Motion to Enforce Settlement Agreement and to Authorize Disbursement or the Withdrawal of Settlement Funds" on September 16, 2011. Later, the Gainsburgh Firm filed a motion to withdraw its motion to enforce, which the district court granted.

. Case number 2013 -CA-0023 is the appeal filed by Mr. Feingerts seeking review of the district court's judgment granting the Manard Firm’s motion to enforce judgment. Upon Mr. Feingerts’ motion, 2013-CA-0023 was consolidated with the instant appeal of the judgment granting the Motion to Enforce of the Gainsburgh Firm.

. Prior to the 2007 regular session of the Louisiana Legislature, La. Civ.Code art. 3071 stated:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.