Judge Terri F. Love
This appeal arises from the expropriation of properties in New Orleans for the construction of new medical facilities following Hurricane Katrina. The parties involved reached a confidential settlement agreement. Following the settlement, the property owners moved to release the monies remaining in the registry of the court. The City of New Orleans opposed the release, contending that the monies represented property taxes due and owing. The property owners contended that the settlement agreement allotted them the monies. The trial court found that the settlement agreement did not reserve property taxes, and granted the release of the monies.
The City of New Orleans appealed alleging that the trial court committed manifest error and abused its discretion by releasing the monies in the registry of the court. We find that the settlement agreement entitled the property owners to the monies remaining in the registry of the court, and affirm the judgment of the trial court.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Louisiana State University and the Veterans Administration (collectively "LSU") expropriated properties in New Orleans for the construction of new medical facilities. During the expropriation process and litigation, LSU deposited funds representing the value of the properties into the registry of the court. The property defendants *913 [1] withdrew the funds from the registry except for the amount of alleged property taxes due. The amount of alleged property taxes remained in the registry of the court pending resolution of the amount of taxes owed.
Following negotiations, the parties entered in a confidential settlement agreement ("Settlement"), which was signed by all parties to the litigation. The Settlement provided that the defendants could withdraw the funds remaining in the registry of the court. These funds were previously earmarked for property taxes. The property defendants[2] filed Motions to Enforce Settlement Agreement and to Withdraw Remaining Funds from the Registry. The City of New Orleans opposed the motion to withdraw the funds, asserting that it never waived the right to collect property taxes. The trial court found that the City could have specifically reserved the right to the funds remaining in the registry or property taxes in the Settlement, but did not. The trial court granted the Motions to Enforce Settlement Agreement and to Withdraw Remaining Funds from the Registry. The City's suspensive appeal followed.
STANDARD OF REVIEW
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.' " Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Id. "[I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even" if "it would have weighed the evidence differently." Id. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Id. "In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo ." Id.
"Legal issues are reviewed with the de novo standard of review." Gordon v. Gordon , 16-0008, p. 3 (La. App. 4 Cir. 6/8/16), 195 So.3d 687, 689.
"A district court's 'interpretation of an alleged compromise agreement is subject to manifest error/clearly wrong review.' " Feingerts v. State Farm Mut. Auto. Ins. Co. , 12-1598, p. 4 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1297, quoting Hancock Bank of Louisiana v. Holmes , 09-1094, p. 6 (La. App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134.
*914 SETTLEMENT AGREEMENT
The City contends that the trial court abused its discretion "by reading outside the terms of the settlement agreement" and committed manifest error by not giving effect to the language contained in the Settlement. Thus, the City asserts that the trial court should not have granted the Motion to Enforce Settlement Agreement and Withdraw Fund from the Registry, as it incorrectly interpreted the Settlement provisions. Thus, we must examine and interpret the Settlement.
"A compromise agreement to avoid litigation is favored by law." Borchardt v. Carline , 617 So.2d 970, 973 (La. App. 4th Cir. 1993). "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071. "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. C.C. art. 3076. This Court further outlined our law and procedures for interpreting contracts[3] as follows:
In interpreting contracts, we are guided by the general rules contained in La. C.C. arts. 2045 - 2057. La. C.C. art. 2045 states that the interpretation of a contract is the determination of the common intent of the parties. To ascertain the parties' intent, the court must first look to the words and provisions of the contract. Amend v. McCabe , 95-0316, p. 7 (La. 12/1/95), 664 So.2d 1183, 1187. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. When the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. C.C. art. 2046, comment (b). Moreover, to determine the meaning of words used in a contract, a court should give them their general prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. C.C. art. 2049. The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof. Ortego v. State, Dept. of Transp. and Development , 96-1322, p. 7 (La. 2/25/97), 689 So.2d 1358, 1363. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement. Richard A. Tonry, P.L.C. ex rel. Tonry v. Constitution State Service, L.L.C. , 2002-0536, p. 3 (La. App. 4 Cir. 7/17/02), 822 So.2d 879, 881. Therefore, each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties *915 before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053.
French Quarter Realty v. Gambel , 05-0933, pp. 6-8 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1029-30.
The Settlement began with the following language: "The undersigned parties to this Settlement, Stipulation and Release Agreement ("Agreement") agree to compromise and settle the disputes and controversies existing among them on the terms and conditions set forth herein." (Emphasis added). Section 3 provided the following:
Recital . Whereas the Parties have engaged in good-faith negotiations for the purpose of resolving the Actions and Defendants' claims that were raised or that could have been raised in the Actions ; and whereas, an agreement and understanding has been reached and whereas the Parties have agreed to settle and compromise all claims that have been or could have been raised in the Actions, they hereby agree as follows:
(Emphasis added). Further, the Settlement defined "Actions" as:
The consolidated lawsuit styled Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. 2226 Canal Street, L.L.C., et al., et al. , bearing NO. 2010-7575, SECTION "13", DIVISION: "M" Civil District Court, Parish of Orleans, State of Louisiana, C/W Nos. 2010-7576, 2010-7577, 2010-7982, 2010-7983, 2010-7985, 2010-7986, 2010-8005, 2010-8052, 2010-8075, 2010-8313, 2010-8320, 2010-10484, 2010-10486, 2010-10648, 2010-10945, 2010-10946, 2010-10947, 2010-10986, 2010-10987, and 2010-11456, and all related claims raised or that could have been raised therein , whether through any reconventional demand, amended or supplemented reconventional demand, third party demand, or otherwise.
(Emphasis added). The Settlement also contained the following provision:
4.2 In consideration of the mutual promises contained herein the State agrees to pay
* * *
The Parties have executed a Motion to Dismiss the Actions with prejudice on the same dates they have executed this Agreement. The State agrees to hold that Motion to Dismiss in escrow pending the funding of the settlement to Defendants. Once funded, the State will file the Motion to Dismiss the Actions within 3 business days and furnish all Parties with copies of the Order dismissing the Actions. In further consideration of the settlement, Defendants shall be entitled to withdraw any remaining funds in the court's registry for the Actions to the extent permitted by law, and the City of New Orleans and the Board agree not to interpose any objections to this withdrawal. The Parties acknowledge and agree that the sum of ... to be paid in accordance with this Agreement, plus receipt of the amounts previously deposited into the registry of the Court in the Action represent the full extent of Defendants' losses, including the amount of attorneys' and experts' fees, within the meaning of Louisiana Constitutional Article I, Section 4 and all statutory law supplemental thereto.
(Emphasis added).
The City contends that the phrase "to the extent permitted by law" referred to the City's right to collect the funds remaining in the registry for property taxes. Further, the City avers that previous consent judgments between the parties reveal *916 the intent to reserve the money for taxes. The prior consent judgments provided that the Defendants could withdraw all of the funds deposited in the registry of the court except for that allegedly owed to the City for property taxes. Those consent judgments provided that the amount of alleged property taxes "shall remain in the registry of the Court pending resolution of whether those taxes are, in fact, due and owing."
The trial court stated the following during the hearing:
I want to see - - to me, it shouldn't have been that difficult to say taxes are excluded. And it's not like an in proper person; we had lawyers there. It sounds like we had multiple Vity [sic] lawyers there that should have said "wait a minute, we want our taxes". that [sic] is - - to me the purpose of those lawyers being there, to protect the interest of the City. And you need to tell me that I got to kind of figure that that's what it meant?
We agree. A reading of the Settlement shows that the parties intended to settle all of their claims arising out of the expropriations. As outlined above, the parties repeatedly stated that the Settlement resolved all claims.
The central phrase is: "Defendants shall be entitled to withdraw any remaining funds in the court's registry for the Actions to the extent permitted by law, and the City of New Orleans and the Board agree not to interpose any objections to this withdrawal." A plain meaning review of the phrase connotes that the Defendants were entitled to withdraw the remaining monies from the registry of the court. A finding that "to the extent permitted by law" meant that the City was reserving its rights to property taxes would invalidate the entire provision allowing Defendants to withdraw the remaining monies in the registry of the court because the City was well aware that the only monies remaining in the registry were those earmarked for alleged property taxes. A reservation entitling the City to a determination regarding the alleged property taxes could have been incorporated into the Settlement. The provision in Section 4.2 did not state that Defendants were entitled to withdraw the funds after property taxes were determined and paid. Contrarily, in the four sections of the Settlement included above, the City failed to include a reservation of any claims, as the document clearly provides that all claims are being settled.
Thus, interpreting the clear and explicit provisions in the Settlement plainly, we find that the Settlement is unambiguous and that Defendants are entitled to the monies remaining in the registry. This leads to no absurd consequences, as parties on all sides of a settlement agreement make concessions to reach an amicable resolution. Accordingly, we find that the trial court did not commit manifest error by granting the Defendants' Motion to Enforce Settlement Agreement and Withdraw Funds from the Registry. The judgment of the trial court is affirmed.
DECREE
For the above-mentioned reasons, we find that the trial court correctly granted the Defendants' Motion to Enforce Settlement Agreement and Withdraw Funds from the Registry, as the Settlement clearly provided that they were entitled to the monies. The judgment of the trial court is affirmed.
AFFIRMED
LOBRANO, J., CONCURS IN THE RESULT

"[T]he properties were part of The PFD Group's real estate investment portfolio." Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. v. 2330 Palmyra St., L.L.C. , 11-0443, p. 2 (La. App. 4 Cir. 12/27/11), 80 So.3d 1234, 1237, writ denied , 12-0270 (La. 3/30/12), 85 So.3d 124.

The following property defendants are subject to this appeal: 2300 Palmyra Street, LLC; 2120 Canal Street, LLC; 2338 Palmyra Street, LLC; 125 Galvez Street, LLC; 2226 Canal Street, LLC; 201 South Miro Street, LLC; 2404 Palmyra Street, LLC; 2105 Palmyra Street, LLC; 2300 Canal Street, LLC; PFD One, LLC; PFD Three, LLC; 2123 Palmyra Street, LLC; 2107 Palmyra Street, LLC; and 2115 Palmyra Street, LLC (hereinafter collectively "Defendants").

This law and procedure also applies to compromises/settlements. Brown v. Drillers, Inc. , 93-1019 (La. 1/14/94), 630 So.2d 741, 748.